GUIDRY, J.
|^Defendant appeals a .summary judgment granted in favor of plaintiff, finding the defendant vicariously liable for the intentional tortious actions of its employee. For the following reasons, we affirm.
FACTUAL AND PROCEDURAL HISTORY
In May 2003, plaintiff, Lana Cowart, was employed by defendant, LQRNHC, LLC d/b/a Lakewood Quarters Rehabilitation and Nursing Center (hereinafter “LQRNHC”),[1] as the Certified Nursing Assistant (“CNA”) Director. Her duties included the hiring and firing of subordinate employees. One of her subordinates, Tangi McKnight, was employed as a CNA supervisor. Ms. McKnight’s position required her to supervise and fill in for or assist her fellow CNAs should it become necessary for any reason.
Various CNAs began to complain to Ms. Cowart that Ms. McKnight was socializing rather than performing her job duties. Ms. Cowart investigated and determined that the complaints were well-founded. The Director of Nursing (Director) advised Ms. Cowart to terminate Ms. McKnight’s employment. However, before terminating Ms. McKnight, Ms. Cowart decided she would first offer Ms. McKnight the option of stepping down from her supervisory position to work as a regular CNA. Ms. McKnight refused to do so. , According to Ms. Cowart, the following exchange then occurred.
Ms. Cowart: I said “Tangi, what I am to do with you? If you don’t.. .what am I to do” and I said, “What am I to do”— *1214 “Or else,” you know, “What am I doing?” She just goes, “Or else what?” I said, “Or terminate you” and she goes, “Terminate me? You’re going to terminate me” and I looked at [the Director and the Director said], “Terminate her” and I said, “Well I guess so,” and she goes, “Oh, so you’re firing me” and I said, “Well, I guess so, if you won’t step down and take a [demotion]” and I was even going to let her take a breather, you 13know, cool off, and I had picked up the termination paper and turned to throw it away and that’s when she attacked me.
When Ms. Cowart turned her back to Ms. McKnight, Ms. McKnight pounced on Ms. Cowart, smashed a coffee mug over her head and proceeded to beat her with a metal three-hole punch. As a result of the beating, Ms. Cowart sustained serious injuries.
Ms. Cowart subsequently filed suit against Ms. McKnight, as well as LQRNHC, alleging LQRNHC was vicariously liable for Ms. McKnight’s intentional tortious actions. Because the facts were essentially undisputed, both Ms. Cowart and LQRNHC sought a summary judgment on the issue of vicarious liability. Following a contradictory hearing, the trial court granted a summary judgment in favor of Ms. Cowart, finding LQRNHC vicariously liable for the intentional tortious conduct of Ms. McKnight. From this judgment, LQRNHC appeals, asserting that it cannot be held vicariously liable for Ms. McKnight’s actions because they were not reasonably incidental to her employment duties or, alternatively, because she had been terminated just prior to the attack and, thus, was no longer its employee.
LAW AND ANALYSIS
Appellate courts review summary judgments de novo under the same criteria that govern the trial court’s determination of whether a summary judgment is appropriate. Duplantis v. Dillard’s Dept. Store, 2002-0852, p. 5 (La.App. 1 Cir. 5/9/03), 849 So.2d 675, 679, writ denied, 2003-1620 (La.10/10/03), 855 So.2d 350. A motion for summary judgment should be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966 B.
|4The facts in this case are essentially undisputed; accordingly, it must simply be determined whether the plaintiff is entitled to judgment on the issue of liability as a matter of law. Vicarious liability is based on LSA-C.C. art. 2320, which provides in part, “[m]asters and employers are answerable for the damage occasioned by their servants and overseers, in the exercise of the functions in which they are employed.” Under LSA-C.C. art. 2320, an employer can be held liable for an employee’s tortious conduct only if the injuring employee is acting within the course and scope of his employment. Spears v. Jones, 2000-2799, p. 4 (La.App. 1 Cir. 2/15/02), 807 So.2d 1182, 1185, writs denied, 2002-0663 and 2002-0767 (La.5/3/02), 815 So.2d 106 and 826.
Generally, courts consider four factors when assessing vicarious liability, including whether the tortious act: (1) was primarily employment-rooted; (2) was reasonably incidental to performance of employment duties; (3) occurred during working hours; and (4) occurred on the employer’s premises. See LeBrane v. Lewis, 292 So.2d 216, 218 (La.1974). It is not necessary that each factor is present in each case, and.each case must be decided on its own merits. Baumeister v. Plunkett, 95-2270, p. 4 (La.5/21/96), 673 So.2d *1215 994, 997. Further, an employer is not vicariously liable merely because his employee commits an intentional tort on the business premises during working hours. Under the jurisprudence, an employer is responsible for an employee’s intentional tort when the conduct is so closely connected in time, place, and causation to the employment that it constitutes a risk of harm attributable to the employer’s business. Menson v. Taylor, 2002-1457, pp. 5-6 (La.App. 1 Cir. 6/27/03), 849 So.2d 836, 840.
We conclude that Ms. Cowart’s claims against LQRNHC arise out of a single transaction. The entire transaction included Ms. Cowart informing |fiMs. McKnight that she had to take a demotion or else be terminated, Ms. McKnight’s refusal, Ms. Cowart’s attempted termination of Ms. McKnight, equivocal at best, and Ms. McKnight’s resultant attack upon Ms. Cowart. We further find that Ms. McKnight was the employee of LQRNHC for the duration of this transaction.
Unquestionably, the attack at issue herein occurred on the employer’s premises during working hours. Moreover, it is patent that the attack was employment-rooted and was reasonably incidental to Ms. McKnight’s employment duties, since her duties implicitly included being counseled by her superiors regarding complaints about her job performance and the actions to be taken as a result of those complaints. Clearly, there was no appreciable passage of time between the remarks directed toward Ms. McKnight regarding her termination and Ms. McKnight’s unprovoked attack on her supervisor. See LeBrane, 292 So.2d at 219.
Accordingly, we conclude that Ms. McKnight’s attack upon Ms. Cowart was so closely connected in time, place, and causation to her employment that it constituted a risk of harm attributable to LQRNHC’s business, thereby rendering LQRNHC responsible for any damages caused by Ms. McKnight’s intentional tor-tious conduct.[2]
CONCLUSION
For the foregoing reasons, the summary judgment is hereby affirmed. All costs of this appeal are assessed to LQRNHC, LLC d/b/a Lakewood Quarters Rehabilitation and Nursing Center.
AFFIRMED.
McCLENDON, J., agrees and assigns additional reasons.
PARRO, J., dissents and assigns reasons.

. The record reflects several variations of the defendant’s name. Throughout this opinion, we use the name that the defendant contended was the proper designation in its answer to the plaintiffs petition.

. Pursuant to LSA-R.S. 23:1032, workers' compensation is the employee's exclusive remedy for injuries sustained in the course and scope of employment, unless the injuries were the result of an intentional tort.